UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE ART OF DESIGN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-CV-595 JD |
| | ) |
| PONTOON BOAT, LLC, d/b/a | ) |
| Bennington and Bennington Marine; and | ) |
| HAWKEYE BOAT SALES, INC., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff, The Art of Design, Inc. ("Plaintiff"), alleges that it applied its Shatter Graphics designs to a limited number of pontoon boats for Pontoon Boat LLC, d/b/a Bennington and Bennington Marine ("Bennington") in exchange for payment. Continuing thereafter, Plaintiff alleges that Bennington incorporated the Shatter Graphics designs, or substantially similar designs, on its products without Plaintiff's authorization. Plaintiff also alleges that Bennington passed along the Shatter Graphics designs to Hawkeye Boat Sales, Inc. ("Hawkeye"), and that Hawkeye likewise began selling products incorporating the Shatter Graphics designs or substantially similar designs.

Bennington and Hawkeye (collectively, "Defendants") have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [DE 13] Apart from arguing a lack of sufficiently pled allegations, Defendants raise the issue of preemption regarding the state law claims. For the reasons stated below, the Court grants Defendants' motion.

1

**FACTUAL ALLEGATIONS**

Plaintiff designs custom artwork that can be applied to a variety of "canvases," such as boats, motorcoaches, airplanes, helicopters, and recreational vehicles. [DE 1 ¶¶ 7-8] Plaintiff alleges that it is the sole author, creator, and owner of certain designs called "Shatter Graphics." *Id.* ¶ 12. The two Shatter Graphics designs at issue here are registered with the U.S. Copyright Office under registration numbers VA 1-979-388 (the "'388 design") and 1-982-002 (the "'002 design"). *Id.* ¶ 13. But while as of October 28, 2016, the '388 design appears to be authored by and registered to Plaintiff [DE 14-1], the '002 design is authored by and registered to an individual named Dean Loucks. *Id.*[1] Dean Loucks is not a party to this action.[2]

Defendants sell products in the marine industry, including pontoon boats. [DE 1 ¶ 14] In or around 2011, Bennington reached out to Plaintiff and requested that Plaintiff propose a design

---

[1] The registrations for each design were not included with the complaint. However, Defendants attached two catalog entries from the U.S. Copyright Office's official website corresponding to each of the designs at issue. [DE 14-1] While not attached to the complaint, the Court may take judicial notice of these documents at this stage without converting the motion to one for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."). "A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Id.* (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). In particular, the Court may take judicial notice as public record information obtained from an official government website. *Betz v. Greenville Correctional Inst.*, 2014 WL 812403, at *1 (S.D. Ill. Mar. 3, 2014); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of military personnel records found online at www.archives.gov website); *Laborer's Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website of the FDIC).

[2] Plaintiff notes in its response to Defendants' motion that "[a]lthough registered copyright VA 1-982-002 is registered in the name of Dean Loucks, it had been assigned to TAOD." [DE 16 at 3 n. 1] Although this fact was not alleged in the complaint, in opposing a motion to dismiss under 12(b)(6), a nonmovant may elaborate on its factual allegations so long as the new elaborations are not inconsistent with the pleadings. *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 771 (N.D. Ill. 2016) (*citing Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Here, Plaintiff added the statement about assignment of ownership, but that does not contradict its claim that it "owns" the '002 design copyright.

for application to a limited number of Bennington's pontoon boats. *Id.* ¶ 17. Each of the designs presented to Bennington contained the following notice:

> TAOD DESIGNS ARE THE PROPERTY OF TAOD. THEY ARE NOT TO BE REPRODUCED, COPIED OR FORWARDED TO ANYONE WITHOUT WRITTEN PERMISSION.

*Id.* ¶ 18. After reviewing the proposed schemes, Bennington selected the Shatter Graphics designs, and the two parties entered into an agreement whereby Plaintiff would apply the designs to the exterior of a limited number of pontoon boats in exchange for payment. *Id.* ¶¶ 18-19. Pursuant to the agreement, Plaintiff painted a limited number of Bennington's boats, and the corresponding invoice indicates that Bennington tendered payment for these services. [DE 1 ¶ 20; DE 1-1]

Sometime after this transaction was completed, Plaintiff alleges that Bennington continued to market, sell, and distribute products displaying the Shatter Graphics design, or substantially similar designs, without Plaintiff's authorization. [DE 1 ¶ 21] According to Plaintiff, these products can be found on Bennington's website: www.benningtonmarine.com. *Id.* ¶ 24. Plaintiff also alleges that Bennington passed along the Shatter Graphics designs, or substantially similar designs, to another marine products retailer, Hawkeye, without Plaintiff's authorization. *Id.* ¶ 22. Hawkeye then likewise allegedly marketed, sold, and distributed products displaying these designs without Plaintiff's consent, and these designs can apparently be found on Hawkeye's website: www.hawkeyeboatsales.com. *Id.* ¶¶ 23, 25.

It is against the backdrop of these facts and allegations that the Court conducts its analysis.

**STANDARD**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc*., 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

Plaintiff asserts six total claims in its Complaint: breach of contract against Bennington (I), unjust enrichment against both Defendants (II), and unfair competition against both Defendants (IV) under Indiana state law; copyright infringement against both Defendants (III) and inducement of copyright infringement against Bennington (V) under the Copyright Act, 17 U.S.C. §§ 106, 106A, 501; and violation of the Digital Millennium Copyright Act (the "DMCA") against both Defendants (VI), under 17 U.S.C. § 1202. The Court proceeds as follows:

4

I. **State Law Claims**

A. **Breach of Contract – Count I**

Plaintiff levies the state law claim for breach of contract against Bennington. The elements of breach of contract under Indiana law are: (1) the existence of a contract; (2) the defendant's breach thereof; and (3) damages. *Ruse v. Bleeke*, 914 N.E.2d 1, 11 (Ind. Ct. App. 2009). Plaintiff alleges that around 2011, Bennington requested that Plaintiff propose a design to be applied to a limited number of Bennington pontoon boats. [DE 1 ¶ 17] Plaintiff and Bennington thereby allegedly entered into an agreement under which Plaintiff would apply graphics to a limited number of Bennington's boats in exchange for payment by Bennington. *Id.* ¶ 19. Plaintiff performed this obligation and painted the Shatter Graphic design onto a limited number of boats. *Id.* at ¶ 20. Plaintiff sent an invoice for its services under the contract to Bennington, and Bennington paid Plaintiff for those services. [DE 1-1] (invoice stamped with "PAID"). Plaintiff does not allege that Bennington did not pay for the graphics applied to that limited number of pontoon boats. Thus, based on Plaintiff's own allegations, the contract was satisfied once Bennington paid Plaintiff for those services listed on the invoice. Plaintiff does not attach the contract at issue and does not allege any additional terms of the agreement; noticeably absent are any allegations of terms expanding the parties' performance beyond the transaction shown by the invoice, or any terms governing Bennington's future conduct and/or use of the designs provided to it. Put another way, Plaintiff here is alleging breach of contractual terms that it does not even allege to exist – its breach of contract claim is thus neither plausible nor one that raises a right to relief above speculation. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Therefore, Plaintiff's claim for breach of contract against Bennington is dismissed without prejudice.

### B. Unjust Enrichment – Count II

Plaintiff next brings a claim for unjust enrichment against both Bennington and Hawkeye. The Copyright Act, however, preempts state law claims, legal or equitable, "that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 …." 17 U.S.C. § 301(a). Section 301(b) then adds: "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to … activities violating legal or equitable rights that are *not equivalent* to any of the exclusive rights within the general scope of copyright as specified by section 106 …." 17 U.S.C. § 301(b)(3) (emphasis added). This Circuit utilizes a two-pronged test to determine if a right under state law is preempted by the Copyright Act: "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Baltimore Orioles v. Major League Baseball Players*, 805 F.2d 663, 674 (7th Cir. 1986). Defendants do not appear to contest whether the designs are fixed in "tangible form" within the scope of section 102. So, the issue arises over the second prong of the *Baltimore Orioles* test and the language of section 301(b)(3), "which excludes from preemption claims that require an extra element for the state cause of action." *Micro Data Base Sys., Inc. v. Nellcor Puritan- Bennett, Inc*., 20 F. Supp. 2d 1258, 1261 (N.D. Ind. 1998). In other words, to survive, Plaintiff's unjust enrichment claim must be based on at least one additional element not already covered by the alleged infringing or copying of the Shatter Graphics designs. Otherwise, the rights asserted by the unjust enrichment claim are equivalent to the rights specified in section 106 and are preempted. *See Baltimore Orioles*, 20 F. Supp. 2d at 677.

Under Indiana state law, "to prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Estate of Henry v. Woods*, ---N.E. 3d---, (Ct. App. Ind. May 19, 2017). However, claims for unjust enrichment that essentially boil down to copyright infringement complaints will not survive. *See, e.g.*, *Micro Data Base Sys.*, 20 F. Supp. 2d at 1263 (dismissing unjust enrichment claim that contained no additional component that would otherwise set it apart from the exclusive rights set out in the Copyright Act); *Stereo Optical Co. v. Judy*, No. 08 C 2512, 2008 WL 4185689, at *4 (N.D. Ill. Sept. 8, 2008) (same); *Stephen & Hayes Const., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1200-01 (N.D. Ill. 1998) (same).

The elements of an unjust enrichment claim alone do not render such a claim preempted, but "because one can retain a benefit to the plaintiff's detriment in an infinite variety of ways," the Court "focuses on the factual basis underlying the claims" to determine whether the unjust enrichment and copyright claims differ qualitatively. *Stephen & Hayes*, 988 F. Supp. at 1200. Here, Plaintiff alleges that Bennington and Hawkeye "receive[d] a measureable benefit by receiving the value of TAOD's *labor, services, and designs* without paying TAOD." [DE 1 ¶ 35] (emphasis added). Plaintiff distinguishes the "labor and services" contained in its unjust enrichment claim from the value of its designs, but the only "labor and services" allegedly to have been rendered by Plaintiff were those conferred when it painted the limited number of pontoon boats for Bennington. As discussed above, the facts as alleged show that those services were paid for by Bennington. That leaves only Plaintiff's theory that Defendants reproduced or prepared derivative works based upon the designs, which overlaps with the rights in the Copyright Act, hence preempting this state law claim. *See* 17 U.S.C. § 106; *see also Baltimore*

7

*Orioles, Inc.*, 805 F.2d at 77 ("a right is equivalent to one of the rights comprised by a copyright if it 'is infringed by the mere act of reproduction, performance, distribution or display.'") (citations omitted).

Moreover, as Hawkeye was not privy to the contractual transaction alleged between Plaintiff and Bennington, it did not receive the labor and services alleged. Thus, Plaintiff's unjust enrichment claim, as alleged against Hawkeye, further fails the Rule 12(b)(6) analysis for lack of plausibility. *Iqbal*, 556 U.S. at 678. Plaintiff's unjust enrichment claim, with regard to both Defendants, is dismissed with prejudice.

### C. Unfair Competition – Count IV

Plaintiff consents to the dismissal of Count IV without prejudice [DE 16 at 7] against all defendants, and the Court declines to substantively address it here. Plaintiff's state law claim for unfair competition is dismissed without prejudice.

## II. Copyright Act Claims

Plaintiff alleges that Defendants committed copyright infringement (Count III), and further alleges that Bennington induced copyright infringement by actively and knowingly causing, encouraging, or urging Hawkeye to engage in infringing conduct (Count V). [DE 1 ¶¶ 38-43, 48-51] Plaintiff brings these claims with regard to both the '388 and '002 designs.

To state a claim for direct copyright infringement, Plaintiff must plead sufficient facts to plausibly suggest "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, (1991)). To allege "copying" under the second element, Plaintiff's complaint must identify the work at issue produced by Defendants

and describe the manner in which Defendants' work infringes upon Plaintiff's work. *See Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511-12 (6th Cir. 2008) (affirming district court's dismissal of complaint that contained only bare legal conclusions and lacked factual allegations as to Defendants' allegedly infringing work).

Under the theory of inducement of copyright infringement, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919, 125 S. Ct. 2764, 162 L.Ed.2d 781 (2005). "Implicit in the elements of both direct infringement and inducement is identification of an allegedly-infringed 'work.'" *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012). Furthermore, because a party defending against a claim of inducement is liable for the infringing acts of another party, inducement, like direct infringement, also requires the identification of the infringing work. Thus, because direct infringement and inducement are both premised on the infringement of a work, both fail absent an identification of that infringement. *See id.*

Defendants argue that Plaintiff has failed to sufficiently identify its own copyrighted designs, much like the plaintiff in *Flava Works*. *See* 2012 WL 2459146, at **2-3 (dismissing complaint where plaintiff failed completely to provide any identification of its works apart from noting that they were "videos"). Plaintiff here has at least provided the copyright registration numbers for its designs [DE 1 ¶ 13], but that does not suffice. Glaringly absent from the complaint are any descriptions or explanations as to what the designs are or look like.[3]

---

[3] And, by merely providing the registration numbers to its copyrighted works, Plaintiff is not making the registrations themselves or the corresponding designs available to either the Defendants or the Court. Indeed, the process to retrieve the registrations from the U.S. Copyright Office is cumbersome and the process for retrieving deposits might not even bear fruit because, as Defendants note, the "Copyright

9

Moreover, Plaintiff has neither identified an allegedly infringing work produced by Defendants, nor any description of how Defendants' work infringes on its own. *See Nat'l Bus. Dev. Servs*, 299 F. App'x at 511-12 (affirming dismissal of plaintiff's infringement claim that contained "neither (1) an identification of a work produced by Defendants that infringes upon Plaintiff's copyrighted work, nor (2) a description of the manner in which Defendants' works infringe upon Plaintiff's work...."). "While Plaintiff['s] copyright infringement claims will not 'be held to a particularity requirement akin to Federal Rule of Civil Procedure 9(b),' *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421-22 (7th Cir. 1993), Plaintiff must plead sufficient facts to meet the requisite standards of *Iqbal* and *Twombly*." *Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 WL 8489973, at *4 (N.D. Ill. Dec. 8, 2015). Therefore, Plaintiff's claims for copyright infringement and inducement of copyright infringement with respect to the designs must be dismissed, without prejudice. *See id.* (dismissing copyright infringement claims as mere speculation where plaintiff failed to articulate the circumstances relating to defendant's alleged copying of the work); *see also Norman v. B.E.T. Television*, No. 2:16-CV-113 RLM-PRC, 2016 WL 7048894, at *2 (N.D. Ind. Dec. 5, 2016), *appeal dismissed sub nom. LASANDRA NORMAN v. B.E.T. TELEVISION* (Dec. 21, 2016) (dismissing amended complaint that failed to offer any facts suggesting how defendant allegedly infringed on the copyrighted work).

### III. Digital Millennium Copyright Act Claims

The DMCA seeks to combat copyright infringement in the digital age by protecting "copyright management information" ("CMI") in various ways. *See* 17 U.S.C. § 1202. Specifically, the DMCA forbids removing or altering CMI, or distributing works knowing the

---

Office does not retain all works deposited for copyright registration." U.S. Copyright Office, Circular No. 6, Obtaining Access to and Copies of Copyright Office Records and Deposits, at 3 (2016).

CMI has been removed or altered. *See id*. CMI, in turn, is defined as the information about the copyright that is "conveyed in connection with copies." § 1202(c). It can include any of the following: the title of the work; the author of the work; the name of the copyright owner; terms and conditions for use of the work; and identifying numbers or symbols referring to the work's copyright information. *See id*.

When Plaintiff provided the Shatter Graphics to Bennington in or around 2011, Plaintiff alleges that each design contained the following notice:

> TAOD DESIGNS ARE THE PROPERTY OF TAOD. THEY ARE NOT TO BE REPRODUCED, COPIED OR FORWARDED TO ANYONE WITHOUT WRITTEN PERMISSION.

[DE 1 ¶¶17-18] Plaintiff alleges that Defendants removed this CMI from its Shatter Graphics designs, and then distributed copies or derivatives of those designs knowing that the CMI had been removed without authorization. [DE 1 ¶¶ 54-55]

While the alleged CMI here claims that "TAOD" owns the labeled designs, the Copyright Office catalog entries for the '388 and '002 designs themselves do not refer to any entity called "TAOD." [DE 14-1] Instead, they note "The Art of Design, Inc." and "Dean Loucks" as the owners.[4] Importantly, the whole point of CMI is to "inform the public that something is copyrighted and to prevent infringement." *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc*., No. 11 C 5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012). Here, the purported CMI describes "TAOD" as the owner, but if one were to see these designs and the above label, and search for this owner to verify the graphics' copyright status, the search would come up empty because the actual owners are The Art of Design, Inc. and/or Dean Loucks. [DE 14-1] *See Pers*.

---

[4] Plaintiff's clarification that the '002 design "had been assigned to TAOD" does not remedy this deficiency. [DE 16 at 3 n. 1] Not only is this clarification lacking in details as to *when* and *how* this assignment took place, but the abbreviation "T-A-O-D" used by Plaintiff is simply used for purposes of the instant filings. [DE 1] Indeed, no business entity named "TAOD" is a party to this lawsuit.

11

*Keepsakes*, 2012 WL 414803, at **6-8 (describing how titles and owners in purported CMI that do not match the actual titles and owners of the copyrighted work hinder the purpose of CMI because they frustrates others' attempts to avoid infringement). This problem is only magnified by the additional fact that there are *no* entities named simply "TAOD" registered in the state of Indiana.[5] [DE 14-2] Therefore, the notification Plaintiff placed on its designs does not qualify as CMI. *See Pers. Keepsakes*, 2012 WL 414803, at **6-8 (dismissing plaintiff's DMCA claims with prejudice because purported CMI did not qualify as such where it did not point the reader to the registered owner). "Allowing a plaintiff to make out a DMCA claim based on alleged CMI that does not link up in any way to the copyright registration is an invitation to unfair litigation against parties who have tried to tread carefully to avoid copyright infringement," and therefore, Plaintiff's DMCA claim must be dismissed with prejudice. *See id.* at *6.

## CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss [DE 13] is hereby **GRANTED**, and it is further **ORDERED** that:

Counts I, III, IV, and V are **DISMISSED** without prejudice; and

Counts II and VI are **DISMISSED** with prejudice.

---

[5] The lack of any registered entity simply named "TAOD" in Indiana is supported by the business search attached to Defendants' motion. [DE 14-2] This search was conducted through an official Indiana government website. *See id.* Thus, as with the Copyright Office catalog records, the Court will take judicial notice of this exhibit and consider it without converting the instant motion into one for summary judgment. *See Ennenga*, 677 F.3d at 773-74; *Betz*, 2014 WL 812403, at *1. The only active registered business in Indiana with "TAOD" in its name is Toad Aviation LLC, but this entity does not appear relevant in any of the pleadings, nor is it even mentioned therein. [DE 14-2]

SO ORDERED.

ENTERED: August 22, 2017

                                              /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court